E-FILED
Monday, 06 February, 2023  10:04:07 AM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

KATIE L.K.,
        Plaintiff,

v.                                          Case No. 1:21-cv-01280-JEH

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.

**Order and Opinion**

Now before the Court is the Plaintiff Katie L.K.'s Motion for Summary Judgment (Doc. 13), the Commissioner's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 16).[1]  For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Katie L.K. filed an application for disability insurance benefits (DIB) on April 10, 2020, alleging disability beginning on September 1, 2015.  Her DIB claim was denied initially on September 1, 2020 and upon reconsideration on October 21, 2020.  After a request for hearing before an administrative law judge, a hearing was held on March 11, 2021 before the Honorable Robert H. Schwartz (ALJ).  At the hearing, Katie had a non-attorney representative, and Katie and a vocational

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 5, 6).

[2] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears at (Doc. 8) on the docket.

expert (VE) testified.  Following the hearing, Katie's claim was denied on March 31, 2021.  Her request for review by the Appeals Council was denied on August 5, 2021, making the ALJ's Decision the final decision of the Commissioner.  Katie timely filed the instant civil action seeking review of the ALJ's Decision on October 6, 2021.

## II

Katie challenges the ALJ's Decision for the following reasons:  1) the ALJ reached an inadequately supported RFC assessment; and 2) the ALJ improperly discounted Katie's subjective symptom allegations.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for

disability.  *See* 20 C.F.R. § 404.1566.  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment.  *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  The factual determination is made by using a five-step test.  *See* 20 C.F.R. § 404.1520.  In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*.  An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four.  *Id*.  However, once the plaintiff shows an inability to perform past

3

work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Katie claims error on the ALJ's part at Step Four.

**A**

The ALJ first determined that Katie last met the insured status requirements of the Social Security Act on March 31, 2017 (her date last insured). AR 18; *see Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (emphasizing that the claimant had to establish actual disability during the insured period). At Step One, the ALJ determined Katie had not engaged in substantial gainful activity during the period from her alleged onset date of September 1, 2015 through her date last insured of March 31, 2017. *Id*. At Step Two, the ALJ determined Katie had the following severe impairment: Parkinson's Disease. *Id*. At Step Three, the ALJ determined Katie did not, through the date last insured, have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) with the following non-exertional limitations. She could never climb ladders, ropes or scaffolds. She could climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl no more than occasionally. She could handle and finger no more than frequently. She had to avoid concentrated exposure to wetness, vibration [sic] fumes, odors, dusts, gases, and poor ventilation. She had to avoid even moderate exposure to hazards like unprotected heights and dangerous machinery.

AR 20-21. He found Katie was capable of performing past relevant work as a residential counselor through the date last insured. AR 25. The ALJ additionally

found, at Step Five, that there were other jobs that existed in significant numbers in the national economy that Katie also could have performed considering her age, education, work experience, and RFC. AR 26. The ALJ ultimately concluded that Katie was not disabled at any time from September 1, 2015 through March 31, 2017, the date last insured. AR 27.

## B

### 1

Katie first argues that the ALJ's RFC assessment was inadequately supported because he ignored three statements from Katie's family members that support that she could not sustain competitive work during the relevant period and because the ALJ had no support for his finding that Katie could handle and finger frequently. The Commissioner disputes the ALJ's RFC assessment was lacking or otherwise not supported by substantial evidence where his narrative was in accordance with SSR 96-8p. *See* SSR 96-8p at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)"). The Commissioner presents three reasons for why Katie's argument about her family's statements should be rejected and argues the ALJ's analysis of Katie's treatment history, exam findings, and imaging was detailed and supported his RFC finding, specifically as to handling and fingering.

Katie's parents wrote a letter dated February 7, 2021 in which they explained that they noticed Katie was not quick to move as swiftly as their other kids when she was in her early teens, Katie began to shuffle a bit when she walked and developed a minor tremor in her hands when she was in her later teens, and that Katie was determined to have Young Onset Parkinson Disease. They explained Katie's two pregnancies were a very hard time for her while she was off her

5

Parkinson's medication and that it was remarkable to see her transformation when she returned to taking her medication.  They explained how Katie's symptoms later became more pronounced and her medication was increased.  They stated:

> The last five years have been very difficult for Katie and we have seen several changes in her, she is physically, mentally and emotionally drained . . . this disease comes with unpredictability, high anxiety, from the unknown of what the next day will be like and the rest of her life, difficulty sleeping, leg stiffness, discomfort and pain, rigidity in her gate, loss in her balance when she walks or is just standing still . . . There are days Katie can't get out of bed and she can't get her kids off to school or get out of a chair . . . On medication, Katie can at least expect a 50/50 chance at a successful day.

AR 236-39.  Katie's husband wrote a letter dated February 18, 2021 in which he explained her neurological symptoms were steadily increasing during the latter half of her first pregnancy, and Katie's symptoms continued to increase or intensify after a year or so of their boys being born at which time she received an official diagnosis of Early Onset Parkinson's.  He stated:

> For years now, my wife has been battling this condition . . . One of the major issues that Katie experiences with her condition are the inconsistencies with Off-Times.  Off-Times are the times where the body just seems depleted, low energy, low enthusiasm, nauseating [sic].  These times can sometimes just pop up, they can be in the morning, afternoon, night . . . These off times and the inconsistencies really limit any stable routine for Katie.

AR 247.  Her husband also explained that Katie's body lacked the communication it needed for her to properly function which "has been a constant battle and will always be."  AR 248.  He described Katie's limitations in lifting items and holding onto items, and specifically, she daily struggled to keep things consistently in her hands.  He concluded, "Writing this letter and reflecting on where we are today from even five (5) years ago, there is definitely a diminished quality of life in Katie. The changes that Katie is going through are not drastic but a progressive decline

that unfortunately will continue." *Id*. Katie's brother wrote a letter dated February 15, 2021 in which he explained he knew she was "only functioning on her lowest setting due to her constantly having to remind her body to do common movements[.]" AR 249. He explained he had seen her biggest difficulties (i.e. walking backwards) on multiple occasions. He said he did not think Katie ever had a "good" day because she was always in pain and "wobbily." *Id*.

Though the Commissioner contends that the ALJ's failure to expressly discuss the statements made by Katie's parents, husband, and brother does not show reversible error, the Court disagrees. The Commissioner first argues that the current regulations make clear that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" using the regulatory factors, such as support and consistency. Defendant's MSA (Doc. 15-1 at pg. 5) (quoting 20 C.F.R. § 404.1520c(d)). The Commissioner accurately cites Section 404.1520c(d), but that glosses over what other current regulations also make clear. 20 C.F.R. § 404.1545(a)(3) provides in relevant part, "We will also consider [in assessing your RFC] descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 404.1529(c)(3) provides, in relevant part, "We will consider all of the evidence presented [in evaluating the intensity and persistence of your symptoms], including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons." SSR 16-3p provides, "[Non-medical sources such as family] may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms," and "The adjudicator will consider any personal observations of the individual in terms of how consistent those

observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p at *7.

It is one thing for an ALJ to not articulate exactly how he considered evidence from a non-medical source using the requirements in paragraphs (a)-(c) of Section 404.1520c (as permitted by Section 404.1520c(d)) and quite another thing for an ALJ to remain *completely silent* as to a handful of third-party statements in a claimant's record. There was absolutely no mention, whatsoever, in the ALJ's Decision that Katie's parents, husband, and brother had all offered letters detailing their observations of Katie. The ALJ's utter silence precludes the Court from finding that the ALJ fulfilled his obligation to at least consider those third-party statements. To accept the Commissioner's argument would be to make meaningless the relevant parts of Sections 404.1529(c), 404.1545(a)(3), and SSR 16-3p. Notably, in the case the Commissioner cited, the ALJ expressly mentioned (and cited) in his Decision the plaintiff's mother's statements presented in her Function Report – Adult – Third Party. *Mason B. v. Kijakazi*, 2:21-cv-02090, 2022 WL 4596686, at *2 (C.D. Ill. Aug. 15, 2022) (Administrative Record at Docs. 14-3 and 14-7). Indeed, in the cases the Court came across in its research, the ALJ at least mentioned the lay witness statements where the claimants unsuccessfully argued the ALJs erred by failing to articulate his or her reasons for rejecting those statements. *See, e.g.*, *Edilburg A. v. Kijakazi*, No. 21 C 5058, 2022 WL 17718392, at *4 (N.D. Ill. Dec. 15, 2022) (finding the plaintiff's assertion that the ALJ did not sufficiently consider his wife's statements to be an impermissible request to re-weigh the evidence where the ALJ specifically noted in her decision the wife's function reports and stated she was not required to articulate how that evidence was considered); *Michael K. v. Saul*, No. 20 C 2944, 2021 WL 1546426, at *7 (finding the ALJ committed no error in mentioning lay witness's assessment only in passing in light of Section 404.1520c(d)).

8

It is the ALJ's utter silence which precludes the Court from accepting the Commissioner's remaining two reasons for why Katie's argument about those statements should be rejected. The Commissioner secondly argues, and says Katie even suggests, the family's statements appear to be redundant of her subjective statements and, as such, are not considered "entire lines of evidence" the ALJ failed to discuss. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating "the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence"). The ALJ, of course, did not say those statements were redundant because he did not mention them at all. The Court would have to guess that was why the ALJ failed to refer to them, but that is not the Court's role. *See Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022) ("We must confine our review to the reasons supplied by the ALJ, rather than allowing the government to invent new findings to rescue an insufficient decision on appeal"). If redundancy was the ALJ's conclusion, he was required to spell that out in the Decision. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). In any event, the Court is not so easily convinced the statements were redundant or duplicative of Katie's. They were third-party statements, not the claimant's own; were by individuals who did not live with her and by one who did; and were a separate category of evidence specifically listed as a separate category of evidence under the regulations (a claimant's own statements versus observations by other persons).

The Commissioner lastly reasons that the family's statements are from February 2021, well after Katie's date last insured of March 31, 2017, such that they do not appear to be about Katie's activities of daily living and limitations during the relevant period. This argument fares no better than the second and for the

same reasons.  The ALJ did not explicitly refer to Katie's family's statements, let alone point out they were untimely.  Also, the substance of those statements, at least discrete portions, could just as easily be read to pertain to the relevant period. Even the Commissioner acknowledges that Katie's parents identified the "last five years," Katie's husband stated she struggled for an unspecified number of years, and Katie's husband reflected "on where we are today from even five (5) years ago."  While written in the present tense, Katie's brother's letter was made possible by his observations of her condition over an extended period of time.  Notably, in his Decision, the ALJ cited and relied upon evidence that was dated *after* (in some instances years after) Katie's date last insured.

Ultimately, there is too much guesswork for the Court to do here for it to say the ALJ committed harmless error in failing to at least mention Katie's family's statements.  *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). This is especially so where the regulations provide that observations made by a claimant's family members will be considered.  Katie's RFC argument in this regard dovetails with her subjective symptom assessment argument, the latter of which further illustrates the harmfulness of the ALJ's error.  As discussed *supra*, Section 404.1529 and SSR 16-3p provide that third-party observations of a claimant will be considered as part of the assessment of the claimant's statements about her symptoms.

There were three separate letters at the ALJ's disposal that set forth first-hand observations of Katie's day-to-day experience from as early as her childhood. That was an entire category of evidence that aligned with Katie's subjective statements that was left unaddressed by the ALJ.  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (an ALJ "cannot simply cherry-pick facts that support a finding

of non-disability while ignoring evidence that points to a disability finding"). The ALJ relied upon an absence of reports by treating sources that they observed "acute limitations in the claimant's gait, strength, coordination, balance, or dexterity." ALJ Dec. AR 22. Katie's family was obviously not subjecting her to physical examinations like her treating sources were, but it could be said that her family's observations were made possible only because Katie outwardly presented with "acute" limitations. *See* Oxford English Dictionary, https://www.oed.com/view/Entry/2031?rskey=zSXUXP&result=1&isAdvanced=false#eid (last visited Feb. 3, 2023) (defining acute in contexts similar to disease to mean "severe; critical" and also defining acute "[of] a problem, crisis, etc." to mean "severe, intense; pressing, urgent"). Perhaps, in the end, the ALJ would reach the very same conclusions he expressly stated in the Decision even had he expressly considered Katie's family's statements. Perhaps, in the end, the ALJ did, in fact, consider those statements in his subjective symptoms assessment. Again, it is all guesswork, and the Court is *not* convinced the ALJ would reach the same result were he to frankly address and discuss those statements in his Decision. To permit this Decision to stand would be to rubber stamp it.

**2**

The Court need not reach Katie's remaining RFC argument nor any of her other remaining arguments. On remand, the ALJ should remain cognizant of the fact that the Decision here was not as tidy as it could have been: the RFC finding included Katie was limited to balancing "occasionally" whereas the VE was questioned about a hypothetical individual who could balance no more than "frequently," ALJ Dec. AR 20, Hearing AR 67; and the ALJ's manner of presenting the VE with varying hypotheticals left open to attack whether the VE did or did not combine the hypotheticals on his own before citing available jobs. *See* Plf's MSJ (Doc. 14 at pg. 14); ALJ Dec. AR 69-70.

## IV

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 15) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on February 3, 2023.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE

12